Filed 5/17/24  P. v. Serrano CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANGEL SERRANO,<br><br>        Defendant and Appellant. | D082075<br><br><br>(Super. Ct. No. SCS319906) |

APPEAL from a judgment of the Superior Court of San Diego County, Enrique E. Camarena, Judge.  Affirmed and remanded with directions.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Stephanie A. Mitchell, and Caelle McKaveney, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Angel Serrano pled guilty to two counts of oral copulation by duress (Pen. Code, § 287, subd. (c)(2)(A); counts 2 & 3), one count of sexual penetration by duress (§ 289, subd. (a)(1)(A); count 5), and one count of rape

by duress (§ 261, subd. (a)(2); count 8). As to counts 2, 3, and 5, Serrano admitted the other party, J.A., was a minor aged 14 years or older, and as to all counts he admitted the acts involved the same person on separate occasions (§ 667.6, subd. (d)) who was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)).

The trial court denied Serrano's subsequent motion to withdraw his guilty plea and sentenced him to 32 years in prison.

Serrano appeals, contending the trial court erred in (1) denying his motion to withdraw his plea, given the trial court's and his counsel's misadvisements as to material terms of the plea; and (2) refusing to award presentence custody credits. He further claims his trial counsel's misadvisements constitute ineffective assistance of counsel and, to the extent one misadvisement is forfeited, his subsequent counsel provided ineffective assistance of counsel in failing to raise that issue.

We conclude the trial court did not abuse its discretion in denying the motion to withdraw Serrano's guilty plea, as its ruling was supported by substantial evidence. Because the evidence does not establish Serrano would have rejected the plea absent the trial court's mistaken advisement the term of parole was 5 instead of 10 years, the court's misadvisement did not merit relief. Nor does the record support Serrano's claim that the trial court failed to consider trial counsel's misadvisements in denying the motion.

We further conclude Serrano fails to establish his claims of ineffective assistance of counsel. Serrano does not establish by a preponderance of the evidence a reasonable probability he would have rejected the plea agreement absent his trial counsel's alleged misadvisements. Because Serrano's trial counsel's misadvisements were not prejudicial, his subsequent counsel did not provide ineffective assistance by failing to raise one of the

2

misadvisements in the motion to withdraw. We also conclude Serrano fails to establish that cumulatively the trial court's and his trial counsel's misadvisements made his plea not knowing, voluntary, and intelligent such that good cause exists for withdrawal.

Nonetheless, we agree with Serrano that the trial court erred in failing to award presentence custody credits where Serrano was already in federal custody on separate charges at the time he was arraigned in this matter, Serrano was subject to a "no bail" order throughout the pendency of this matter, and Serrano was sentenced in this case while his federal charges remained unfinalized.

We thus affirm (1) the trial court's denial of the motion to withdraw Serrano's guilty plea and (2) the judgment of conviction, but remand to the trial court to award presentence custody credits consistent with this opinion.

I.

One evening in March 2021, Serrano, then 47, called his 14-year-old stepdaughter J.A., who was home alone with him, into his bedroom. At his urging, she drank roughly four shots of liquor, snorted cocaine, and smoked marijuana. Then, until approximately 8:00 a.m. the following morning, Serrano repeatedly sexually assaulted J.A., who, while hazy on the details due to bouts of lost consciousness, asked him to stop and told him he was hurting her. DNA swabs taken from J.A. during a forensic examination matched Serrano. While this incident was being investigated, Serrano was taken into federal custody in April 2021 on unrelated drug and gun charges.

A November 2021 felony complaint charged Serrano with nine offenses and various special allegations as a result of the incident involving J.A. Serrano was arraigned on December 6, 2021, at which time the trial court granted the People's "no bail" motion and returned him to federal custody

3

without bail. At no point during the pendency of this matter was Serrano booked into county jail.

In August 2022, on the morning scheduled for the preliminary examination, the People filed an amended complaint charging Serrano with 25 counts, two with life sentences, and numerous special allegations, several of which also carried potential life sentences. After several hours of negotiations, the trial court struck the amended complaint and Serrano pled guilty to four of the original nine counts, an aggravating factor, and an age enhancement in exchange for a sentencing range of 20 to 32 years. The plea agreement, Serrano's counsel, and the trial court while taking Serrano's guilty plea all mistakenly represented the parole term as 5 years, when the statutory parole term was 10 years. (§ 3000(b)(2)(B).)

Shortly after, Serrano wrote a letter to the trial court requesting withdrawal of his guilty plea. Serrano's trial counsel was relieved and replacement counsel (motion counsel) was appointed. In November 2022, motion counsel moved to withdraw Serrano's guilty plea. The court denied the contested motion following a two-day evidentiary hearing.

The trial court found Serrano's testimony not credible and the testimony of his trial counsel credible. It found Serrano was fully informed of the protracted plea negotiations and the People's longstanding intention to file the amended complaint should the preliminary hearing go forward. It found any changes to the written plea agreement were discussed with Serrano prior to his oral change of plea. The court concluded the plea was modified at Serrano's request to avoid the sodomy acts and allegations of force he vehemently denied. The court concluded the emotional wellbeing of J.A. and Serrano's wife was a "significant" factor Serrano considered in deciding to plead guilty. It noted Serrano expressed no reservations during

4

the change of plea hearing, he asked clarifying questions of both the court and his counsel, his "resolve to plead guilty and avoid the filing of the amended complaint that included life allegations" did not change as a result of the answers to those questions, and he had "ample opportunity to object or outline his confusion" and "felt freely enough to" do so. The trial court found the erroneous parole term not only "was not a significant factor in the negotiations" but not a negotiated term at all. Thus, "on its own," that misadvisement "does not call for withdrawal of the plea." The trial court concluded Serrano failed to show by clear and convincing evidence good cause to withdraw his plea.

On April 21, 2023, the trial court sentenced Serrano to a prison term of 32 years. The probation report recommended awarding no presentence custody credits. The court requested and considered information about Serrano's federal custody for purposes of awarding credits, but ultimately awarded zero credits, indicating its belief that it lacked discretion to award credit for his time in federal custody.

II.

A.

First, Serrano argues reversal of his guilty plea is required because (1) the trial court misadvised him of the direct consequences of his plea by telling him he would serve 5 rather than 10 years on parole; (2) the trial court failed to consider trial counsel's misadvisements in denying his motion to withdraw his plea; (3) his trial counsel provided ineffective assistance of counsel by misadvising him on issues pertaining to the plea agreement or, to the extent forfeited, motion counsel provided ineffective assistance by failing to raise one of the misadvisements; and (4) cumulatively, the trial court's and

5

trial counsel's misadvisements were prejudicial. We, however, conclude reversal is not merited.

Prior to judgment, a court may grant a defendant's motion to withdraw a guilty plea "for a good cause shown." (Pen. Code, § 1018.) A defendant bears the burden of producing clear and convincing evidence of good cause, which can encompass "[m]istake, ignorance[,] or any other factor overcoming the exercise of free judgment." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) Proven ineffective assistance of counsel is good cause. (*People v. McCary* (1985) 166 Cal.App.3d 1, 7.) Appellate courts review the denial of motions to withdraw guilty pleas for abuse of discretion and must adopt the trial court's factual findings if supported by substantial evidence or a reasonable inference drawn from that evidence. (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667.) Conflicting evidence and inferences are resolved in favor of the trial court's order. (*Ibid.*) Appellate courts neither reweigh evidence nor assess credibility. (*People v. Lopez* (2021) 66 Cal.App.5th 561, 574.)

1.

Serrano contends the trial court's misadvisement of the parole term requires reversal, because a 10-year term "would have been a deal breaker" for him. The People disagree, relying on *In re Moser* (1993) 6 Cal.4th 342 (*Moser*). Under our deferential review, we agree with the People that Serrano fails to establish prejudice and therefore is not entitled to relief.

In *Moser*, our Supreme Court held that "a defendant who has pleaded guilty after receiving inadequate or erroneous advice from the trial court with regard to the potential consequences of a plea generally is entitled to obtain relief only by establishing that he or she was prejudiced" by showing "that but for the trial court's erroneous advice with regard to the applicable parole term, the defendant would not have entered the guilty plea." (*Moser, supra,*

6

6 Cal.4th at p. 345.) A defendant who fails to make that showing "can obtain relief only if the period of parole imposed conflicts with a specific, negotiated term of the plea agreement." (*Ibid.*)

While Serrano claims on appeal that the 10-year parole term "would have been a deal-breaker," as the People note, Serrano's hearing testimony was unmistakable that while the erroneous parole term "would have been a factor" in his decision to enter into the plea agreement, he only "[p]ossibly" would have gone forward with the preliminary hearing and rejected the plea deal on that basis. To the extent Serrano contends otherwise, the evidence does not support his claim. Moreover, deferring, as we must, to the trial court's credibility findings, trial counsel was clear that the parole term was never part of the plea negotiations, and Serrano identifies no clear conflict between a 10-year parole term and any other negotiated term of the agreement.

Because the evidence establishes neither (1) that, but for the trial court's misadvisement of the parole term, Serrano would have rejected the plea deal; nor (2) that the 10-year parole term conflicts with a negotiated term of the agreement, the trial court's misadvisement is not an independent basis for relief. Thus, the trial court did not abuse its discretion in denying Serrano's motion to withdraw his plea based on its own misadvisement. (*Moser*, *supra,* 6 Cal.4th at p. 345.)

2.

Serrano also contends the trial court's denial of his motion to withdraw his plea was not supported by substantial evidence and was therefore an abuse of discretion because the court did not consider trial counsel's alleged misadvisement as to Serrano's eligibility for fire camp and other credits, addressed in detail below. We, however, agree with the People that, while

the ruling did not expressly address the misadvisement issue, the trial court inferentially considered and rejected it.

"[T]here is no indication that the trial court here failed to consider" those arguments, and Serrano "does not present, and our independent research has not disclosed, any authority that requires the trial court to make findings as to each argument raised in the pleadings." (*People v. Codinha* (2021) 71 Cal.App.5th 1047, 1072.) We agree with the People that the reasonable inference from the trial court's determinations that (1) Serrano was not credible, (2) trial counsel was credible, and (3) Serrano failed to establish good cause to support withdrawal of his plea, is that the trial court considered and rejected on the merits Serrano's claims of misadvisement by his trial counsel. We disagree with Serrano's position that these findings "have nothing to do with the materiality of the misadvisement." The trial court's overt credibility assessment directly bears on whether it found Serrano's contentions of the issue's materiality genuine and hence his showing of good cause.

Accordingly, we conclude substantial evidence supports the trial court's denial of Serrano's motion, and its denial was not an abuse of discretion.

3.

Serrano argues his trial counsel provided ineffective assistance meriting relief from his guilty plea by (1) misadvising him of the parole term and (2) telling him he "would serve no more than 12-18 years" and (3) "potentially even less if he joined the fire camp program," for which he was categorically ineligible. Should we find that Serrano waived the second of these grounds, he argues his motion counsel provided ineffective assistance by failing to raise it. We agree with the People that Serrano's claims as to both counsel require an analysis of the constitutional sufficiency of trial

8

counsel's representation or any resulting prejudice. If trial counsel did not provide ineffective assistance of counsel, motion counsel's failure to raise a meritless argument cannot constitute ineffective assistance of counsel. (*People v. Jones* (1979) 96 Cal.App.3d 820, 827.) We further agree with the People that, even if we assume deficient performance by trial counsel, Serrano's claim fails because he does not meet his burden of establishing prejudice.

In resolving this claim, we find it appropriate, given that the trial court found trial counsel credible and Serrano incredible, to afford great deference to trial counsel's statements to the extent they conflict with Serrano's. (*See People v. Perez* (2018) 4 Cal.5th 1055, 1066 [where trial court resolved question of fact, "we see no reason to withhold the deference generally afforded to such factual findings"].)

"[I]n order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934 (*Alvernaz*).) Factors relevant to determining if a defendant would have accepted or rejected a plea agreement "include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*Id.* at p. 938.) "[A] defendant's self-serving statement . . . is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and

9

must be corroborated independently by objective evidence." (*Ibid.*) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).) The defendant's burden of proof is preponderance of the evidence. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1418.)

Serrano does not appear to argue his trial counsel misadvised him as to the remainder of the plea, and substantial evidence supports the trial court's finding Serrano was otherwise informed of the parameters of his plea. As the People note, trial counsel reviewed the plea agreement with Serrano line by line and answered any questions. He explained to Serrano the effect of any changes made after Serrano initialed and signed the form.

As the People contend, the evidence also establishes the probable consequences of trial were not favorable to Serrano. Serrano admitted to sexual activity with J.A. that was confirmed by DNA, but claimed the activity was consensual and without force. Yet the evidence, giving due deference to the trial court's credibility findings, confirms trial counsel was not optimistic about Serrano's prospects. According to Serrano's own letter to the court shortly after the plea, his trial counsel told him "he had NO way to defend [Serrano's] case against these charges and 20 to 32 years was better than life." Trial counsel testified that the discovery supported theories of both physical force and duress, and "duress could be proven in this case very easily" given "the use of intoxicants" and Serrano's "position of trust." He made this clear to Serrano. When viewing J.A.'s forensic interview with Serrano, trial counsel also explained to him how the People could use "different act[s]" as "separate incidents." Serrano's exposure on the original complaint of nine counts with special allegations exceeded 100 years. The amended complaint charged Serrano with 25 counts, two with life sentences

10

and most with special allegations, some of which also carried potential life sentences. Thus, as the People note, the likely outcome of trial would have been the same or worse: Serrano would be found guilty and nevertheless receive a parole period of ten years, ineligibility for fire camp, and eligibility for violent offender credits at best, while very possibly being incarcerated for life. To the extent Serrano claims the People ignore "other potential outcomes," we disagree. While it is true, as he argues, that the appellate record contains no direct evidence of his guilt, the record is clear as to his trial counsel's views of the evidence and the likely outcome of any trial, a relevant consideration under *Alvernaz*. (*Alvernaz*, *supra*, 2 Cal.4th at p. 938.)

Serrano makes much of his age—49—and the fact that a "32-year sentence with violent offender credits" and 10 years of restrictive parole is "essentially a life sentence." But even serving "over 21 years," as Serrano acknowledges he will, provides at least the possibility of release. As avoiding a life sentence was at least one of the reasons Serrano pled guilty, the contemporaneous evidence, including the likely outcome of any trial, simply does not corroborate Serrano's after-the-fact claim that he "would not have pleaded guilty" absent the misadvisements.

Indeed, as the People contend, the record shows that avoiding a life sentence was only one of several reasons Serrano pled guilty. Serrano himself said another reason was to avoid making his wife "listen[ ] to details of . . . sexual acts that happened" with her daughter. Serrano was also concerned about the deleterious effects testifying would have on J.A. To the extent Serrano now argues he would not have pleaded guilty and seeks to undermine the trial court's finding that "Serrano considered [J.A.]'s and his wife's emotional status as significant" in his decision to plead guilty, substantial evidence supports the trial court's conclusion. In his letter to the

11

judge, Serrano stresses in a postscript that his trial counsel told him J.A. "was having a hard time breathing. She did not want to testify and [Serrano's] wife was also having a very hard time." Serrano "truly felt such emotion and empathy for both of them that [he] felt the only thing that could stop all this suffering was to do what the prosecutor and [trial counsel] wanted" and sign the plea agreement. He "was worried about them." His supplemental declaration reiterates that he "was concerned" about J.A. and his wife "and the damage and suffering" J.A.'s testimony "would cause to both." Both Serrano and his trial counsel testified that, after the plea and at Serrano's request, trial counsel told Serrano's wife that avoiding traumatizing J.A. was one of the reasons he decided to plead guilty.

In sum, given trial counsel's assessment of the evidence, Serrano's exposure, Serrano's desire to avoid a life sentence, and Serrano's significant concern for the emotional wellbeing of his family should the trial go forward, the record does not evidence a reasonable probability Serrano would have chosen to proceed to trial had his trial counsel not misadvised him. Thus, absent prejudice, we conclude Serrano's trial counsel did not provide ineffective assistance of counsel. (*Strickland*, *supra*, 466 U.S. at p. 697.) Moreover, as trial counsel's performance was not constitutionally deficient, Serrano's claim that his motion counsel provided ineffective assistance of counsel in failing to raise one of the alleged misadvisements below likewise fails. Given the trial court's adequately supported findings and the evidence before it, Serrano fails to meet his burden to show that raising the allegedly incorrect representations as to his likely prison term would have resulted in the trial court granting his motion to withdraw.

12

4.

Even considering the collective prejudice of the trial court's and trial counsel's misadvisements, as Serrano urges, we conclude he still fails to show good cause to withdraw his plea. As explained above, given the significant consideration Serrano gave to any trial's likely effect on J.A. and his wife, his desire to avoid spending the remainder of his life in prison, and the probable, significant exposure Serrano faced had he proceeded to trial, we conclude Serrano has failed to establish a reasonable probability he would have rejected the plea agreement and proceeded to trial absent all the alleged deficiencies combined.

We thus affirm the trial court's order denying Serrano's motion to withdraw his guilty plea for failure to show good cause.

B.

Finally, Serrano contends he was entitled, under Penal Code section 2900.5, to presentence credits for his time in federal custody from the date of his arraignment to the date of his sentencing in this matter, such that the trial court erred in awarding him zero credits. In their brief, the People counter that, because Serrano's federal custody is not "'attributable to proceedings related to the same conduct for which [Serrano] has been convicted,'" he is not entitled to credits. (Citing § 2900.5, subd. (b).) At oral argument, the People conceded a remand is appropriate yet contended further evidence was needed to determine whether custody credits were warranted. Upon independent review, we agree with Serrano that the trial court erred in not awarding credits. (*People v. Anaya* (2007) 158 Cal.App.4th 608, 611.)

"[W]hen [a] defendant has been in custody . . . all days of custody . . . shall be credited upon his or her term of imprisonment."

13

(§ 2900.5(a).)  However, "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (*Id.*, subd. (b).)  Further, "[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (*Ibid.*)  In clarifying section 2900.5, our Supreme Court has stated that, "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*People v. Bruner* (1995) 9 Cal.4th 1178, 1193-1194 (*Bruner*).)  In cases involving dual custody, the defendant bears the burden of proving entitlement to credit.  (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1105 (*Huff*).)

Here, Serrano was taken into federal custody in April 2021 on unrelated drug and gun charges.  When Serrano was arraigned in this matter on December 6, 2021, the trial court granted the People's no-bail motion and remanded Serrano to federal custody.  He remained remanded to federal custody without bail throughout the pendency of this case.  Serrano was ultimately sentenced in this matter on April 21, 2023.  At that time, Serrano's federal case was not yet final.  The parties agree the relevant period of dual custody comprises 502 days.

The People concede Serrano "was 'in custody'" at a federal institution for purposes of section 2900.5.  They contend, however, Serrano is barred from receiving presentence credit by *Bruner*'s strict causation rule.  Yet *Bruner* simply "conclude[d] that when presentence custody may be concurrently attributable to two or more unrelated acts, *and where the*

14

*defendant has already received credit for such custody in another proceeding*, the strict causation rules of [*In re*] *Joyner* [(1989) 48 Cal.3d 487] should apply." (*Bruner*, *supra*, 9 Cal.4th at p. 1180, italics added.) At the time of Serrano's sentencing, such was not the case here. Rather, as *Bruner* itself acknowledges, "section 2900.5 is intended to provide equitable treatment for one held in *pretrial* custody on mere *charges* of crime." (*Id.* at p. 1192.) Serrano has shown "the pending [state] charge[s] alone would have prevented his release during th[e relevant] period." (*Ibid.*) Because he was held without bail in this matter, he "could not have secured his release even if he had made bail in the [federal] case" or if the federal charges were dropped. (*Huff*, *supra*, 223 Cal.App.3d at p. 1106.) Accordingly, both the federal charges and the instant charges were but-for causes of Serrano's detention. (*In re Marquez* (2003) 30 Cal.4th 14, 21.) Whether a formal "hold" was placed on Serrano is irrelevant. As the People conceded at oral argument, Serrano's remand to federal custody without bail is the effective equivalent.

Despite the People's argument to the contrary, at the time of sentencing this was not a case involving a potential windfall of dual credit. Such would be the case had Serrano already been convicted of and sentenced for the federal charges at the time he was arraigned in this matter, as he would have been required to serve that time in custody regardless. (See generally *In re Rojas* (1979) 23 Cal.3d 152.) But those are not the facts here. Rather, at the time of Serrano's sentencing in this case, it was possible the federal charges would be dismissed or Serrano found not guilty, in which case he would never receive credit for his presentence custody. (*People v. Lathrop* (1993) 13 Cal.App.4th 1401, 1404.) As Serrano was first sentenced in this matter, the trial court here should have awarded Serrano credit for the period from his arraignment through his sentencing, as his custody was

15

attributable to the charges here.  (*Id.* at p. 1405.)  It was then for the federal court, if and when the time arose, to account for the award of presentence credits in this case so as to avoid duplicative credit.  (*Ibid.*)

We thus conclude on this record Serrano has carried his burden of showing entitlement to presentence credit for the time from his arraignment to his sentencing in this matter.

III.

We affirm the trial court's denial of Serrano's motion to withdraw his guilty plea.  We also affirm the judgment of conviction but remand this matter to the trial court to (1) determine whether the federal matter has been finalized; (2) determine whether presentence credits were awarded in the federal matter for the relevant period, December 6, 2021 to April 21, 2023, totaling 502 days; and (3) if federal custody credits were not awarded for the relevant period, then award presentence custody credits, including any credits under Penal Code section 2933.1, consistent with this opinion. Thereafter, the trial court shall prepare an amended abstract of judgment and transmit a certified copy to the Department of Corrections and Rehabilitation.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.

16